**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JOHN-MICHAEL KUCZYNSKI, Ph.D.,<br>    Plaintiff, | Civil Action No. 1:26 Cv. 06119 |
| -against- | **COMPLAINT** |
| UBS FINANCIAL SERVICES INC.,<br>    Defendant. | **JURY TRIAL DEMANDED** |

---

Plaintiff John-Michael Kuczynski, Ph.D., by and through undersigned counsel, for his Complaint against Defendant UBS Financial Services Inc. ("UBS"), alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action against UBS, a registered broker-dealer, arising from its conduct as custodian of approximately $7 million in assets belonging to the Jane Casey Hughes Revocable Trust (the "Trust"), of which Plaintiff is a one-third residuary beneficiary.

2. In January 2025 — weeks before the settlor Jane Casey Hughes died on February 1, 2025 — UBS accepted an inbound transfer of approximately $7 million executed under a Power of Attorney that named, on the face of the instrument, a then-current UBS employee — Violet Louise Reid — as successor attorney-in-fact, and that named the same UBS employee, under the companion Trust instrument, as backup successor trustee. Because the settlor was still living, the transfer was made by an attorney-in-fact under the Power of Attorney, not by a trustee. UBS produced no record of the supervisory or conflicts review that acceptance of such a transfer required. See Exhibits A, B, F, K, M.

3. On August 29, 2025, the entire long-held equity portfolio in the Trust's UBS account was liquidated in a single event, generating $473,533.05 in realized capital gains that in-kind distribution under the Trust's mandatory "outright and free of trust" language would have avoided. See Exhibits A, C. Sixty days later, the single account was fragmented into six accounts and, on the same day, $70,582.79 in Trust assets was wired to the trustee's litigation counsel. See Exhibits D, E.

4. The document filed in multiple courts as the "UBS freeze letter" restricting the Trust's six accounts — bearing UBS Reference No. 43772714-2025-1115 — is undated, unsigned, and, per its own native-file properties, was authored in Microsoft Word by a legal assistant inside the offices of the trustee's counsel, Offit Kurman, P.A. (Author: "Purdie, Terry"), not at UBS. See Exhibits H, I. The document's authenticity is independently verifiable by forensic examination of

the native files.

5. Plaintiff brings this action to hold UBS to account for these supervisory, records, and custodial failures, and for the injury they have caused him as a beneficiary of the Trust.

## THE PARTIES

6. Plaintiff John-Michael Kuczynski, Ph.D., is a citizen of the State of North Carolina, residing in Fayetteville, North Carolina. He is a one-third residuary beneficiary of the Jane Casey Hughes Revocable Trust under Section V of the Trust instrument. See Exhibit A.

7. Defendant UBS Financial Services Inc. is a Delaware corporation with its principal place of business in `1285 Avenue Of The Americas New York NY 10019` and is a broker-dealer registered with the Securities and Exchange Commission and a member of the Financial Industry Regulatory Authority ("FINRA"). UBS conducts substantial business in this District, including through offices in Manhattan.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the action is between citizens of different States (North Carolina and, for UBS,  New York) and the amount in controversy exceeds $75,000, exclusive of interest and costs. The capital-gains tax liability attributable to the $473,533.05 in avoidable realized capital gains, together with Plaintiff's one-third residuary interest in the approximately $7 million in Trust assets held at UBS, exceeds the threshold.

9. Plaintiff's claims arise under the common law of the applicable State. Diversity jurisdiction under 28 U.S.C. § 1332(a) supplies a complete and independent basis for this Court's jurisdiction over each claim; no claim depends on an implied private right of action under any federal statute or regulation. Federal securities and broker-dealer standards — including Regulation Best Interest (17 C.F.R. § 240.15l-1) and the supervisory obligations of Securities Exchange Act § 15(b)(4)(E) (15 U.S.C. § 78o(b)(4)(E)) and FINRA Rules 3110, 3241, and 3270 — are pleaded solely as evidence of the standard of care governing UBS's conduct as a registered broker-dealer and custodian, and not as freestanding causes of action.

10. This action does not fall within the probate exception to federal jurisdiction. Consistent with Marshall v. Marshall, 547 U.S. 293 (2006), this is an in personam action against UBS in its capacity as broker-dealer and custodian; it does not seek to probate or annul a will, to administer a decedent's estate, or to reach or dispose of any res in the custody of a state probate court.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and its principal bussiness is in New York, and under § 1391(b)(1) because UBS is subject to personal jurisdiction in, and transacts substantial business from, this District.

11A. The operative conduct is centered in this District. The UBS financial advisor of record for the Accounts, on whose watch the transactions at issue — including the January 2025 inbound transfer, the August 29, 2025 liquidation, and the October 29, 2025 account restructuring — were executed or permitted, is based at a UBS branch in New York, New York. See Exhibit G (statements identifying the branch and advisor of record). In addition, the banking- and account-related aspects of the Trust's administration were handled through New York counsel retained for that purpose in New York, New York. A substantial part of the account administration and the events giving rise to Plaintiff's claims thus occurred in this District.

## FACTUAL ALLEGATIONS

### A. The Trust and Plaintiff's Interest

12. The Jane Casey Hughes Revocable Trust was originally created in 1996 and amended and restated over time, most recently by the amendment dated September 26, 2022. See Exhibit A. Upon the death of the settlor, Jane Casey Hughes, on February 1, 2025, the Trust became irrevocable. See Exhibit M (death certificate).

13. Section V of the Trust directs that the trustee "shall dispose of the remaining trust assets" to the settlor's three children — Plaintiff, Carolina Reid, and Alexandra Kuczynski — "outright and free of trust." See Exhibit A. Plaintiff's residuary share is one-third. The distribution directive is mandatory, not discretionary.

### B. The January 2025 Pre-Death Transfer Under Power of Attorney

14. The settlor, Jane Casey Hughes, died on February 1, 2025. See Exhibit M. On or about January 2025 — that is, within weeks before her death, and while she was still living — approximately $7 million was transferred from a Charles Schwab account to UBS. By the August 2025 statement, the transferred assets were held at UBS as a single account (ending 882) with a value of $7,544,121.82. See Exhibit F.

15. The Transfer was executed under a Durable Financial Power of Attorney dated September 26, 2022 (the "POA"). See Exhibit B. Because the settlor was still living and the Trust had not yet become irrevocable, the transferor acted as attorney-in-fact under the POA, not as trustee. Carolina Reid did not become trustee until after the settlor's death. The lawfulness of the Transfer therefore turns on the scope of the authority conferred by the POA, not on any power held by a trustee.

16. Section 7 of the POA names Violet Louise Reid — the attorney-in-fact's daughter — as successor attorney-in-fact. See Exhibit B. The Trust instrument separately names the same Violet Louise Reid as backup successor trustee. See Exhibit A. Violet Louise Reid was, at all relevant times, an employee of UBS. See Exhibit K.

17. The POA contains no waiver of self-dealing and no authorization for the attorney-in-fact to

transact with institutions employing members of her own family. See Exhibit B.

18. UBS thus accepted, into its own custody, approximately $7 million transferred under an instrument that on its face named a UBS employee as the successor fiduciary over the transferred assets. UBS has produced no record of any supervisory review, conflicts-of-interest review, or outside-business-activity disclosure addressing that facial conflict.

### C. The August 29, 2025 Liquidation

19. On or about August 29, 2025, the entire long-held equity portfolio in the Trust's UBS account — including positions held for decades — was liquidated in a single event. See Exhibit C. The liquidation generated $473,533.05 in realized capital gains. See Exhibit C.

20. Had the same assets been distributed in kind to the beneficiaries at stepped-up basis, consistent with the Trust's mandatory-distribution directive, no such gain would have been recognized. No distribution in kind, and no distribution of any kind, was made. See Exhibits A, C.

21. On information and belief, the liquidation and the subsequent placement of proceeds into UBS-managed vehicles generated fee revenue for UBS. UBS has produced no best-interest analysis, suitability review, or tax-consequence disclosure supporting the liquidation.

### D. The October 29, 2025 Account Fragmentation and the Wire to Trustee's Counsel

22. On or about October 29, 2025, the single pre-existing UBS account was restructured into six accounts (ending 882, 999, 998, 997, 343, and 001). See Exhibit E. No contemporaneous disclosure of the restructuring was made to Plaintiff.

23. On the same day, $70,582.79 in Trust assets was wired from UBS to Offit Kurman, P.A., the trustee's litigation counsel. See Exhibit D.

### E. Concealment of the Liquidation and the Additional Accounts During Settlement Negotiations

24. During settlement negotiations in a prior Maryland proceeding, the liquidation and the existence of the additional UBS accounts were not disclosed to Plaintiff or his then-counsel. See Exhibit L. Plaintiff learned of the additional accounts and the liquidation only because bank statements were later included as attachments to a filing made in a District of Columbia proceeding. See Exhibits G, L.

### F. The Undated, Unsigned "Freeze Letter" and Its Origin

25. The document submitted in multiple courts as UBS's restriction ("freeze") letter for the six accounts bears UBS Reference No. 43772714-2025-1115, is undated, and is signed only "UBS AG, Subpoenas, Levies and Garnishments Group." See Exhibit I (the native freeze letter) and Exhibit H (composite forensic package containing the letter and its native file properties).

26. The native file properties of that document, captured directly from the document-properties dialog and reproduced in Exhibit H, reflect that it was authored in Microsoft Word ("Microsoft Word for Microsoft 365") by a legal assistant at the trustee's counsel's firm, Offit Kurman, P.A. (Author: "Purdie, Terry"), created January 16, 2026, at 4:29:34 PM, and produced through Adobe Acrobat 25.1.20997 — not created at UBS. Exhibit H reproduces the properties of multiple versions of the document as filed and as circulated, each bearing the same "Purdie, Terry" authorship and Microsoft Word origin. Exhibit I is the native freeze letter itself, filed in its original electronic form so that its metadata remains intact for inspection. These facts are verifiable by inspection of the native files by a qualified forensic examiner.

27. On April 8, 2026, UBS's then-outside counsel (Elizabeth Small, Riker Danzig LLP) sent Plaintiff a written response, reproduced in Exhibit H, confirming that UBS had retained the firm to respond to Plaintiff's inquiry about the letter and that UBS was fielding that inquiry through its standard policies and procedures — while declining to provide further information on the ground that Plaintiff was "not an authorized party" on the accounts.

28. The trustee's counsel filed and relied upon the freeze letter across multiple proceedings, and made representations to courts based upon it, including representations that Plaintiff caused the restriction. See Exhibit J.

29. Separately, in a letter dated December 21, 2025 (Author metadata: "McCulloch, Meghan"; reproduced in Exhibit H), the trustee's counsel stated in writing that legal fees "for the defense of unjustified litigation proceedings... are properly paid from the assets of the trust." That letter is a written, contemporaneous admission by the trustee's own counsel that the trustee has been funding her litigation defense from the corpus of the Trust — the same corpus in which Plaintiff holds a one-third residuary interest — including the $70,582.79 wired to that firm on October 29, 2025. See Exhibits D, H.

30. UBS was placed on written notice of the dispute concerning the document and the accounts. By letter dated April 20, 2026, directed to UBS's General Counsel, Americas (Patrick T. Shilling) and UBS Compliance, Plaintiff demanded that UBS maintain the existing restriction until the native document was produced and verified and any release was directed by a court, and expressly warned that release after that notice would expose UBS to claims for aiding and abetting breach of fiduciary duty, conversion, and negligent release of trust assets on notice of dispute. See Exhibit O. Plaintiff gave further notice to UBS Compliance/Legal by email dated April 27, 2026. See Exhibit P. Plaintiff also filed a complaint with FINRA concerning UBS's conduct. See Exhibit N (Confirmation No. ba5562ced156).

## COUNT I — NEGLIGENCE / BREACH OF CUSTODIAL DUTY OF CARE
*(Against UBS)*

31. Plaintiff repeats and realleges paragraphs 1 through 30.

32. As the broker-dealer and custodian holding the Trust's assets, UBS owed a duty of reasonable care to the Trust and its beneficiaries, including Plaintiff, in the acceptance, custody, handling, and disposition of those assets.

33. The measure of that duty for a registered broker-dealer is informed by prevailing industry and regulatory standards of care, including Regulation Best Interest (17 C.F.R. § 240.15l-1), which requires a broker-dealer to exercise reasonable diligence, care, and skill and not to place its own financial interest ahead of the customer's. These standards are pleaded as evidence of the applicable standard of care, not as an independent cause of action.

34. UBS breached that duty by executing the August 29, 2025 single-event liquidation of the entire long-held equity portfolio — without any best-interest, suitability, or tax-consequence analysis — in circumstances where in-kind distribution at stepped-up basis, consistent with the Trust's mandatory "outright and free of trust" directive, would have avoided the $473,533.05 in recognized gain, and where the liquidation and redeployment of proceeds into UBS-managed vehicles generated fee revenue for UBS. See Exhibits A, C.

35. As a direct and proximate result of UBS's breach, the Trust and its beneficiaries, including Plaintiff, suffered damages, including the capital-gains tax liability attributable to the $473,533.05 in avoidable realized capital gains and Plaintiff's proportionate share of the resulting loss, in an amount to be proven at trial.

### COUNT II — NEGLIGENT SUPERVISION
*(Against UBS)*

36. Plaintiff repeats and realleges paragraphs 1 through 30.

37. UBS owed a duty to exercise reasonable care in supervising its employees and the accounts within its custody, including a duty to establish, maintain, and enforce supervisory systems reasonably designed to detect and address conflicts of interest and to review transactions presenting facial indicia of exploitation. The content of that duty is informed by prevailing broker-dealer supervisory standards, including Securities Exchange Act § 15(b)(4)(E) (15 U.S.C. § 78o(b)(4)(E)) and FINRA Rules 3110, 3241, and 3270, pleaded as evidence of the standard of care and not as an independent cause of action.

38. UBS breached that duty by failing to supervise: (a) the January 2025 inbound transfer under a POA naming a UBS employee as successor fiduciary (Exhibits B, K); (b) the August 29, 2025 liquidation (Exhibit C); (c) the October 29, 2025 one-to-six account restructuring and the same-day $70,582.79 wire to the trustee's litigation counsel, undertaken with no disclosed business purpose (Exhibits D, E); and (d) the conflict of interest presented by Violet Louise Reid's employment at UBS.

39. UBS produced no supervisory record, conflicts-committee determination, firewall

memorandum, recusal acknowledgment, customer-due-diligence file, or outside-business-activity disclosure addressing any of these matters.

40. As a direct and proximate result of UBS's negligent supervision, Plaintiff suffered damages in an amount to be proven at trial.

### COUNT III — AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
*(Against UBS)*

41. Plaintiff repeats and realleges paragraphs 1 through 30.

42. The trustee owed fiduciary duties to Plaintiff as a beneficiary, including duties of loyalty, impartiality, and to distribute the residue "outright and free of trust." See Exhibit A.

43. UBS had actual or constructive knowledge of the trustee's breaches — including retention of distributable assets, the conflicted transfer, and the liquidation — from the facial indicia present in its own records, including the POA naming its employee, the mandatory-distribution language, and the pattern of transactions. See Exhibits A, B, G, K.

44. UBS provided substantial assistance to those breaches by executing the transfer, the liquidation, the account restructuring, and the wire to trustee's counsel. See Exhibits C, D, E, F.

45. The trustee's breaches include the use of Trust assets to fund the trustee's own litigation defense. The trustee's counsel admitted in writing, in a letter dated December 21, 2025, that legal fees for the "defense of unjustified litigation proceedings" were being "paid from the assets of the trust." See Exhibit H. UBS executed the October 29, 2025 wire of $70,582.79 in Trust assets to that same counsel. See Exhibit D. UBS thereby provided substantial assistance to the depletion of the corpus in which Plaintiff holds a one-third residuary interest.

46. As a direct and proximate result, Plaintiff suffered damages in an amount to be proven at trial.

### COUNT IV — CONVERSION
*(Against UBS)*

47. Plaintiff repeats and realleges paragraphs 1 through 30.

48. Upon the settlor's death on February 1, 2025, the Trust became irrevocable and Section V's mandatory directive vested in Plaintiff a definite, presently distributable one-third residuary interest in the Trust's assets held at UBS. Plaintiff's interest in those specific, identifiable funds is superior to any interest of UBS. See Exhibits A, M.

49. UBS exercised unauthorized dominion and control over Trust property to the exclusion of Plaintiff's rights by wiring $70,582.79 in Trust assets on October 29, 2025 to the trustee's litigation counsel to fund the trustee's personal defense — a purpose adverse to the beneficiaries — and by liquidating and redeploying the corpus into UBS-managed vehicles rather than

distributing it as the Trust mandated. See Exhibits C, D.

50. UBS continued to exercise dominion over the assets after being placed on written notice, by Plaintiff's letters of April 20 and April 27, 2026, of the dispute over the accounts and the disputed authenticity of the restriction instrument, and Plaintiff has demanded preservation and proper disposition of his interest. See Exhibits O, P.

51. As a direct and proximate result of UBS's conversion of Trust assets, Plaintiff has been deprived of his one-third residuary interest and has suffered damages in an amount to be proven at trial.

### COUNT V — FRAUD AND NEGLIGENT MISREPRESENTATION
*(Against UBS — the "freeze letter")*

52. Plaintiff repeats and realleges paragraphs 1 through 30.

53. The specific instrument at issue is a document bearing UBS Reference No. 43772714-2025-1115 and the letterhead of UBS's "Subpoenas, Levies and Garnishments Group," undated and unsigned, submitted to the Circuit Court for Montgomery County, Maryland (C-15-CV-26-000381) and relied upon in other proceedings as a genuine UBS restriction notice. See Exhibits H, I, J.

54. The representation the instrument conveyed — that it was a genuine communication created and issued by UBS restricting the accounts — was false. The native file properties of the document, reproduced in Exhibit H and preserved in the native file at Exhibit I, reflect that it was authored in Microsoft Word ("Microsoft Word for Microsoft 365") by "Purdie, Terry," a legal assistant at the trustee's counsel's firm, Offit Kurman, P.A.; created January 16, 2026, at 4:29:34 PM; and produced through Adobe Acrobat 25.1.20997 — not created at UBS. A genuine UBS "Subpoenas, Levies and Garnishments Group" communication could not have been authored in Microsoft Word by a named individual at Offit Kurman, P.A. These are the who (Terry Purdie, Offit Kurman), what (a document falsely presented as a UBS-issued restriction bearing UBS's reference number and letterhead), when (created January 16, 2026, and thereafter submitted to court), where (the Montgomery County proceeding and related matters), and how (Microsoft Word authorship and Adobe Acrobat production outside UBS, verifiable by native-file inspection) required to particularize the misrepresentation.

55. UBS is answerable for the misrepresentation on either of two alternative footings, pleaded in the alternative under Fed. R. Civ. P. 8(d): (a) if UBS created or authorized issuance of the instrument bearing its reference number and letterhead, it knowingly or recklessly issued a false instrument in disregard of its books-and-records and commercial-honor obligations; or (b) if UBS did not create the instrument, then upon receiving Plaintiff's written notice on April 8, April 20, and April 27, 2026 that a document bearing its reference number and letterhead was being used in litigation, UBS negligently failed to disavow, correct, or disclaim the instrument it

knew or should have known was being represented as its own. See Exhibits H, O, P.

56. The instrument was submitted to and relied upon by courts and by the parties to justify the continued withholding of Trust assets and to attribute the account restriction to Plaintiff. That reliance was intended, foreseeable, and directly injurious to Plaintiff, whose one-third residuary interest remained withheld as a result. See Exhibits J, O.

57. As a direct and proximate result of the use of the false instrument and UBS's conduct with respect to it, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor on all counts;

B. Award compensatory damages, including but not limited to the capital-gains tax liability attributable to the $473,533.05 in avoidable realized capital gains and Plaintiff's consequential losses, in an amount to be proven at trial;

C. Award disgorgement of fees earned by UBS in connection with the liquidation and the managed accounts;

D. Award punitive damages to the extent permitted by law;

E. Enter injunctive relief, including an order compelling production of the complete transfer file, all six-account records, and UBS's internal compliance and restriction-decision records, and preserving the status quo of the restricted accounts pending adjudication;

F. Award pre- and post-judgment interest, attorneys' fees, and costs to the extent permitted by law; and

G. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 07/19/2026

Respectfully submitted,

Li Weng, Esq.  Attorney for the Plaintiff
Licensed in NY, DC, and the following
**U.S. District Courts**

New York Eastern District Court
New York Southern District Court
Maryland District Court

Rockville Law Group, Founding Partner

36-16 Main Street, Suite 803, Flushing NY 11354

(516) 846 2242 (WhatsApp), (929) 708 2307

## EXHIBIT LIST

**Exhibit A** — Jane Casey Hughes Revocable Trust, with all amendments through September 26, 2022 (Section V mandatory-distribution language; Violet Louise Reid named backup successor trustee).

**Exhibit B** — Durable Financial Power of Attorney dated September 26, 2022 (Section 7 naming Violet Louise Reid successor attorney-in-fact; no self-dealing waiver).

**Exhibit C** — EXCERPT: the UBS statement page (September 2025, "Summary of gains and losses") showing the August 29, 2025 single-event liquidation and the $473,533.05 in realized capital gains ($469,775.10 long-term plus $3,757.95 short-term).

**Exhibit D** — EXCERPT: the UBS statement page (October 2025 Resource Management Account activity) showing the October 29, 2025 "FEDERAL FUNDS ... WIRE TO Offit Kurman P.A." in the amount of $70,582.79.

**Exhibit E** — EXCERPT: the UBS statement page(s) (October 2025 consolidated) showing the fragmentation of the single account into six accounts (ending 882, 999, 998, 997, 343, 001).

**Exhibit F** — EXCERPT: the UBS statement page (August 2025) showing the intact corpus of $7,544,121.82 held in a single account (ending 882) before liquidation.

**Exhibit G** — The complete original UBS Financial Services account statements (all pages), provided for the full record so that no excerpted page is presented out of context. These statements were produced by the trustee's own counsel (Offit Kurman, P.A.) and filed by the trustee in the Montgomery County proceeding (C-15-CV-26-000381) as "UBS Statements — Redacted." Any redactions (black-outs) were made by the trustee's counsel as produced; Plaintiff has not altered them. The MDEC e-filing header stamps are retained to show provenance from the trustee's own production. Exhibits C, D, E, and F are excerpted from these statements.

**Exhibit H** — COMPOSITE FORENSIC PACKAGE documenting the origin of the freeze letter (the original, meticulously assembled PDF). Contains, with native document-properties captures for each: (i) the undated, unsigned "freeze letter," UBS Reference No. 43772714-2025-1115 (SLG Group), in its docketed and undocketed versions, each showing Author "Purdie, Terry"; created January 16, 2026, 4:29:34 PM; Application "Microsoft Word for Microsoft 365"; Producer "Adobe Acrobat 25.1.20997"; (ii) the Elizabeth Small (Riker Danzig LLP) letter(s) concerning UBS's restriction of the accounts; (iii) the December 21, 2025 letter from the trustee's counsel (Author metadata "McCulloch, Meghan") stating that defense legal fees are "paid from the assets of the trust"; and (iv) the Woodbridge "Notice to Qualified Beneficiary" confirming the amendment chain and the Feb. 1, 2025 date of death. The document properties are self-authenticating on inspection and independently verifiable by a qualified forensic examiner.

**Exhibit I** — The UBS "freeze letter" (UBS Reference No. 43772714-2025-1115) by itself, filed

in its native electronic form so that its original metadata (Author "Purdie, Terry"; Microsoft Word; Adobe Acrobat) remains intact and is not flattened by combination with other documents.

**Exhibit J** — The trustee's April 8, 2026 "Motion for Order Compelling Release of Restrictions on UBS Financial Services, Inc. Held Accounts" (Montgomery County, C-15-CV-26-000381), with its exhibits — including the freeze letter (its Exhibit 1) and the Elizabeth Small letter (its Exhibit 2) — showing the trustee's counsel submitting and relying upon the freeze letter to obtain relief.

**Exhibit K** — UBS's "Meet the Team" webpage (Park Hill Wealth Management, advisors.ubs.com) identifying Violet Reid as a Client Associate at UBS since September 2023, establishing her employment at UBS.

**Exhibit L** — The June 2, 2025 email chain between Plaintiff's then-counsel (Jarrett Colby) and the trustee's counsel (Meghan McCulloch), establishing that, as of that date, only a single pre-liquidation UBS statement (February 28) had been produced and that the liquidation and additional accounts were not disclosed during settlement negotiations.

**Exhibit M** — Death certificate of Jane Casey Hughes (date of death February 1, 2025).

**Exhibit N** — FINRA investor complaint concerning UBS (Confirmation No. ba5562ced156) and any supplement.

**Exhibit O** — April 20, 2026 letter to UBS (General Counsel, Americas Patrick T. Shilling, and UBS Compliance; addressees including Ross Mitel and Alaina Beach), captioned as to the "Forged UBS Compliance Letter in Court Record — Account KUxx882 et al. / Ref. No. 43772714-2025-1115," demanding that UBS maintain the existing restriction until the native document is produced and verified and any release is directed by a court, and requesting the native, unaltered letter with date, signature, and intact metadata; it places UBS on notice of the disputed fiduciary relationship, the Violet Reid Rule 3241 concern (FINRA Confirmation No. ba5562ced156), the pending proceedings, and the misuse of UBS's reference number and letterhead.

**Exhibit P** — April 27, 2026 email to UBS Compliance/Legal (the notice the trustee's counsel later attached as Exhibit 1 to the July 2, 2026 Motion to Specially Assign Proceedings).